UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTRELL WEBB, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF BATAVIA, et al., <br><br> Defendants. | No. 22 CV 228 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Martrell Webb made a 911 call about a domestic violence incident with a female occupant in his apartment. Two Batavia Police Department officers responded to the call. After communicating with the two people on the scene, the officers arrested Webb for domestic battery. Webb now brings a § 1983 claim against the officers in their individual capacities for violation of his Fourteenth Amendment rights. He also seeks to hold the City of Batavia liable under § 1983 and under state law for indemnification.

**I.  Legal Standard**

A motion for summary judgment may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party … [and] [t]he substantive law of the dispute determines which facts are material." *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (internal citations

omitted). I do not weigh evidence or make credibility determinations. *See id.* at 741. I view all the facts and draw reasonable inferences in favor of the non-moving party to determine whether summary judgment is appropriate. *See Uebelacker v. Rock Energy Coop.*, 54 F.4th 1008, 1010 (7th Cir. 2022).

## II.    Local Rule 56.1

Local Rule 56.1 governs the procedures that parties must follow when filing or opposing motions for summary judgment. *See* N.D. Ill. Local R. 56.1. The moving party must file a "statement of material facts that complies with LR 56.1(d) and that attaches the cited evidentiary material." N.D. Ill. Local R. 56.1(a)(2). The statement of material facts must contain concise numbered paragraphs and "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." N.D. Ill. Local R. 56.1(d). The court has discretion to "disregard any asserted fact that is not supported with such a citation." N.D. Ill. Local R. 56.1(d)(2). The non-moving party must file a response to the movant's statement of facts. *See* N.D. Ill. Local R. 56.1(b)(2). The response must contain numbered paragraphs that correspond to the numbered paragraphs in the movant's statement of facts and cite to specific evidentiary material when disputing an asserted fact. *See* N.D. Ill. Local R. 56.1(e). Compliance with the Local Rules is required, even for *pro se* litigants. *See Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven pro se litigants must follow procedural rules."). A party moving for summary judgment against a *pro se* litigant is required under Local Rule 56.2 to

2

provide them an explanation of the summary-judgment procedure. *See* N.D. Ill. Local R. 56.2.

Defendants filed a Rule 56.1(a)(2) statement of facts, [44], a Rule 56.2 Notice to Unrepresented Litigants Opposing Summary Judgment, [45], and a response to Webb's Rule 56.1(a)(2) statement of facts, [57].[1] Webb filed a Rule 56.1(a)(2) statement of facts, [52] at 12–13, but he did not file a response to the defendants' statement of facts.[2] Because Webb has not filed a response to defendants' statement of facts, I accept those facts as undisputed. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."). While I accept the defendants' facts as undisputed, I view those facts in the light most favorable to Webb. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) ("[A] nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant."). The burden remains with the defendants to show that they are entitled to judgment as a matter of law.

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings.

[2] Defendants object to ¶¶ 6–11 of Webb's affidavit, [52] at 22–23, for being conclusory, argumentative, and without proper foundation. [56] at 3–4. Defendants also object to several of Webb's facts in his Rule 56.1 statement for being immaterial, argumentative, and without proper foundation. *See* [57] at ¶ 5–11. I consider the merits of defendants' objections below and disregard any unsupported facts in Webb's Rule 56.1 statement.

**III.     Facts**

Webb made a 911 call to the Batavia Police Department about removing Dakota Williams, a female occupant, from his apartment. [44] ¶ 5. Officers Miller and Sulaver responded to the call and first spoke to Webb and Williams in separate rooms. [44] ¶¶ 6–7. Williams told Officer Sulaver that she had been the one to ask Webb to call the police because she did not feel free to leave the apartment. [44] ¶ 8. After Officer Sulaver rejoined Webb and Officer Miller, Webb said that he wanted Williams to leave the apartment but did not want to press any charges against her. [44] ¶ 10. Officer Sulaver then rejoined Williams, who said that she wanted to press charges against Webb for "putting his hands" on her. [44] ¶ 12.

This back-and-forth between the two rooms continued as both Webb and Williams gave their version of events to the officers. Officer Sulaver asked Webb about the markings on Williams's neck, which Webb explained resulted from him "restraining" Williams when she chased him around the apartment with a pair of scissors. [44] ¶ 14. Williams denied this and explained that Webb had choked her because she had changed her phone password and denied him access to her phone. [44] ¶¶ 15–16. She admitted to grabbing a pair of scissors but only after Webb had touched her. [44] ¶ 15. Webb responded, "I did," when confronted with Williams's accusation that he grabbed her before she picked up the scissors, and then began describing a different incident in which Williams had looked through his phone while sleeping. [44] ¶ 17. He told the officers that the markings on Williams's neck were a result of his "mental frustration" of "trying to have a conversation" and being told to

4

"leave her alone." [44] ¶ 17. After speaking to Officer Sulaver and confirming her side of the story, Williams agreed to provide a written statement. [44] ¶ 18. The officers then told Webb that he was being arrested and charged for domestic battery and took him into custody. [44] ¶¶ 19–20. The officers allowed Williams to leave the apartment. [44] ¶ 24.

Webb filed suit under 42 U.S.C. § 1983. He sued the officers in their individual capacities for violation of his Fourteenth Amendment right to equal protection based on his sex and the City of Batavia under a theory of *Monell* liability. He also brings a state law claim for indemnification against the City. [6].[3]

## IV. Analysis

To establish a violation of the Equal Protection Clause, a plaintiff must show that the policy "had a discriminatory effect" and that the defendants were "motivated by a discriminatory purpose." *See Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). To show discriminatory effect, a plaintiff must show that "he was a member of a protected class and he was treated differently from a similarly situated member of an unprotected class." *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). "[T]o show discriminatory purpose, a plaintiff must show that the

---

[3] Webb filed an Amended Complaint without leave to file one. [31]. I struck the Amended Complaint for failure to file a motion seeking permission to amend. [34]. He now attempts to include claims from his Amended Complaint in his response brief. *See* [31] (state law claims for false arrest and battery); [52] at 2–4. A plaintiff may not attempt to amend his complaint through his response brief. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Webb also brought a § 1983 claim against defendants for conspiracy to deprive his constitutional rights. He expressly abandons this claim in his response brief. [52] at 9. Defendants are entitled to summary judgment on the conspiracy claim based on Webb's abandonment and I disregard any attempt to introduce other claims into the case at this late stage.

decisionmaker 'selected or reaffirmed a particular course of action at least in part 'because of'… its adverse effects upon an identifiable group.'" *Id.* at 908.

### A. Individual Liability of Officers

Webb brings a § 1983 claim against Officers Miller and Sulaver for sex discrimination in violation of the Equal Protection Clause. Webb alleges that his arrest was discriminatory because the officers arrested him based on the belief that he was "the aggressor and a black male." [52] at 4.[4]

Even when viewing all facts in a light most favorable to Webb, there is no evidence in the record to support an inference that the officers acted with discriminatory intent. The undisputed facts show that the officers weighed several factors when making the decision to arrest Webb. None of these factors were based on gender. These factors included: Williams's assertion that Webb would not let her leave the apartment, her statement (partially confirmed by Webb) that she had grabbed scissors only after Webb had gotten physical, and the strangulation marks on Williams's neck. [44] ¶¶ 8, 12–13, 15. They also considered Webb's side of the story: his assertion that he wanted Williams to leave the apartment, that Williams was chasing him around the apartment with scissors, and that Williams's bruises were a result of his "mental frustration" of "trying to have a conversation" and being told to "leave her alone." [44] ¶¶ 10, 14, 17. He denied Williams's account and told the officers that he did not touch Williams until she "got the scissors." [44] ¶ 17. The officers also

---

[4] Webb's Complaint only alleges sex discrimination. [6]; *see also* footnote 3 above. Webb's mention of his race in his response brief does not bring a race-discrimination claim into the case.

6

considered Webb's preference not to press charges against Williams and Williams's willingness to file a statement and press charges against Webb. [44] ¶¶ 10, 12, 18, 26.

These factors do not relate to Webb's or Williams's gender. Nor does Webb present evidence that suggests the factors that the officers considered were pretext for discrimination. To prove discriminatory prosecution on the basis of sex, a plaintiff must show that "the police failed to bring charges against female lawbreakers who were similarly situated to him in all relevant respects." *Sides v. City of Champaign*, 496 F.3d 820, 827 (7th Cir. 2007). Webb offers no evidence to support such an inference. He repeats conclusory statements unrelated to his equal protection claim that the officers lacked the authority to arrest him without a valid warrant. [52] at 7. But his affidavit does not supply a proper foundation of personal knowledge about the officer's intent, and the presence or absence of an arrest warrant is irrelevant.[5] He argues that the arrest was based on Officer Sulaver's belief that "Plaintiff was the aggressor, yet both parties had damages. Some of Plaintiff's property was damaged." [52] at 7. He also seems to suggest that Williams was being dishonest to the police.

---

[5] Webb cannot now add a claim for false arrest under the Illinois Constitution. *See* footnote 3. Additionally, "[w]hen a person with authority over the premises consents to an entry by law enforcement, that entry is reasonable and does not infringe on the person's Fourth Amendment rights." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). Webb made a 911 to the Batavia Police Department and consented to the officers' entry. *See* [44] 5–6. And "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Id.* Here, the undisputed evidence demonstrates that the officers had an eyewitness account from a victim, corroborating marks on her neck, and partial corroboration from the alleged aggressor. The presence of a competing account from Webb does not defeat probable cause. *See Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 745 (7th Cir. 2003) ("it is not the function of the police to establish guilt; the responsibility of sorting out conflicting testimony and assessing the credibility of putative victims and witnesses lies with the courts"); *see also Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 439 (7th Cir. 1986).

[52] at 7. Webb argues that these factors point to a "factual uncertainty," but there are no disputed material facts here. The undisputed facts in the record do not support a reasonable inference of gender discrimination by the officers. Defendants' motion for summary judgment on this claim is granted.

Because I find that there was no violation of a constitutional right, Officers Miller and Sulaver are also entitled to qualified immunity. *See Taylor v. Ways*, 999 F.3d 478, 487 (7th Cir. 2021) ("On summary judgment, the qualified immunity defense depends on two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at [that] time. If the answer to either question is no, the defendant official is entitled to summary judgment.") (internal quotation marks omitted).

B.   **Municipal Liability**

Webb also brings a § 1983 claim against the City of Batavia. To succeed on such a claim, a plaintiff must establish that the municipality maintained a policy or custom that was the "moving force" behind his constitutional injury. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A plaintiff may prove existence of such a policy or custom in three ways: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019).

8

Webb argues that the City's arrest policy is based on gender and violated his equal protection rights. [52] at 4, 10.[6]

Two alleged policies are at issue. The first is a newsletter from the Kane County State's Attorney Office that Officer Sulaver admits he relied on when making the arrest. [44-2] ¶ 16; [44-2] at 7. Defendants argue that the newsletter is not an official policy of the City and that there is no evidence to establish that it is widespread enough to constitute a custom. [56] at 9. Indeed, the article appears to be a "supplemental newsletter for the Kane County, Illinois, law-enforcement community" distributed by the Kane County State's Attorney. [44-2] at 7. A newsletter from the Kane County State's Attorney cannot be attributed to the City of Batavia. Moreover, to prove the existence of a custom or practice, a plaintiff must show that there are enough similar incidents that point to a pattern of conduct rather than an isolated incident. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Webb has not identified any other incidents outside of his own arrest to suggest that officers relied on the newsletter in a manner that constituted a custom. *See* [52] at 9–10.

The second policy at issue is the City of Batavia's Policy on Domestic Violence. [44-5] at 4–13. Webb does not dispute that the policy is facially neutral. *See* [52] at 4. The Policy provides that officers should avoid making cross complaints and try to

---

[6] Webb cites to *Jenkins v. Bartlett*, 487 F.3d 482 (7th Cir. 2007), a case involving *Monell* liability for failure to train. [52] at 9–10. But alleging a "policy of inaction" is a different theory of liability that Webb does not offer any support for. *See J.K.J. v. Polk Cnty.*, 960 F.3d 367, 378 (7th Cir. 2020) ([T]he path to *Monell* liability based on inaction is steeper because, unlike in a case of affirmative municipal action, a failure to do something could be inadvertent and the connection between inaction and a resulting injury is more tenuous.").

identify the dominant aggressor. [44-5] at 10. The policy lists the following factors that an officer shall consider: (a) the intent of the law to protect victims of domestic violence from continuing abuse; (b) the threats creating fear of physical injury; (c) the history of domestic violence between the persons involved; and (d) whether either person acted in self-defense. [44-5] at 10.

When a policy is facially gender-neutral, a plaintiff must show that the "adverse effect reflects invidious gender-based discrimination." *See Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 274 (1979). In other words, both discriminatory effect and purpose must be proven. *See Alston*, 853 F.3d at 906. A plaintiff may use statistics to prove discriminatory effect, but "[s]tatistics are relevant only if they address the pertinent question" of whether the plaintiff "was treated differently from a similarly situated member of the unprotected class." *Id.* at 907.

In support of his argument, Webb presents statistics that the City arrested more men than women for domestic battery.[7] [52] at 13. He draws this conclusion based on a record of arrests for domestic battery in Batavia from 2018 to 2022, [52] at 40–47, and asserts that over sixty percent of the arrestees are men. [52] at 5. Defendants object to the use of the statistics because Webb failed to produce the document in discovery and failed to lay a proper foundation for it. [57] ¶ 9. The City

---

[7] Webb cites to the Violence Against Women Act and various cases that do not bear on the question of whether the City had an unconstitutional policy of gender discrimination. *See* [52] at 5–6. Webb also offers statistics about national incidents of domestic violence to argue that "many men underreport or fail to report incidents of domestic violence due to embarrassment, fear of disbelief, and society's view that men cannot (or possibly, should not) be victims of domestic abuse." [52] 6–7. National statistics about domestic violence do not address the pertinent question of whether gender discrimination motivated Webb's arrest.

10

also points out that the data does not list the gender of the arrestees. [57] ¶ 9. Because Webb includes the document without any explanation of where or how he obtained it, I exclude the evidence for failure to properly authenticate the document. *See Woods v. City of Chi.*, 234 F.3d 979, 988 (7th Cir. 2000) ("[T]he party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records.").

But even if the statistics that Webb offers were admissible and represent what Webb purports them to be, discriminatory effect cannot be reasonably inferred from these statistics. To show disparate impact, statistics must be so stark that they are "unexplainable" on other grounds, "leading to the inescapable conclusion" of discriminatory intent. *See Alston*, 852 F.3d at 908 (citing *Gomillion v. Lightfoot*, 364 U.S. 339, 341 (1960)). The statistics lack sufficient details to support the inference that similarly situated members of the unprotected class were treated differently than Webb—there is no information about the gender of the arrestee, whether the arrests were made in cross complaint domestic violence incidents, or whether the parties in the dispute were opposite genders. Moreover, even if Webb's conclusion is correct, a sixty percent arrest rate for men is not so stark as to inescapably lead to a conclusion of discriminatory intent. Because Webb has failed to provide sufficient evidence of discriminatory effect and discriminatory purpose of the City's Domestic Violence Policy, his *Monell* claim does not survive summary judgment.

11

### C. Indemnification

Webb brings a state law indemnification claim against the City based on his sex discrimination claim against the officers. [6]. Because I find no constitutional violation by the officers, the derivative claim for indemnification fails. *See Patrick v. City of Chicago*, 81 F.4th 730, 737–38 (7th Cir. 2023).

## V. Conclusion

Defendants' motion for summary judgment, [42], is granted. Enter judgment and terminate civil case.

ENTER:

                                                      Manish S. Shah
                                                    United States District Judge

Date: October 13, 2023